In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 11-2343 & 11-2757

BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., *et al.*,

*Petitioners-Appellees*,

*v.*

BCS INSURANCE COMPANY,

*Respondent / Cross-Petitioner-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 2954—**James F. Holderman**, *Chief Judge*, and
**Joan Humphrey Lefkow**, *Judge*.

ARGUED DECEMBER 1, 2011—DECIDED DECEMBER 16, 2011

Before EASTERBROOK, *Chief Judge*, CUDAHY, *Circuit Judge*, and PRATT, *District Judge*.[*]

EASTERBROOK, *Chief Judge*. BCS Insurance Co. is owned by the Blue Cross and Blue Shield insurers ("plans") across the nation (one in each state). BCS is a captive insurer, with the plans themselves as residual claimants.

---

[*] Of the Southern District of Indiana, sitting by designation.

This creates the possibility of conflict if one or more of the plans attempts to have BCS reimburse it for an expense that the plans in other states have not incurred. Conflicts also can arise if some plans have purchased coverage that others did not. The contracts that govern the arrangement between BCS and the plans provides for arbitration should a plan seek reimbursement that BCS declines to provide.

In 2003 healthcare providers filed class action suits in Florida against every Blue Cross Blue Shield plan in the nation. (The details of claims made in these suits are not important for current purposes.) Twelve plans, which had purchased errors-and-omissions insurance from BCS, asked it to assume the defense and indemnify them should they lose. BCS declined, and the plans demanded arbitration. They made a joint demand, inaugurating a consolidated proceeding. The plans named one arbitrator, and BCS named another. When these two could not agree on a third to complete the panel, seven of the twelve plans asked a district court to appoint the neutral. Section 5 of the Federal Arbitration Act, 9 U.S.C. §5, authorizes that relief.

BCS replied with what it described as a cross-petition to compel a de-consolidated arbitration. It contended that *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), which holds that arbitrators may entertain class actions only if the parties have authorized this procedure by contract, also conditions consolidation on the parties' express assent. Moreover, BCS contended, the decision whether the demands of several parties

may be consolidated for a single arbitration must be made by the court rather than the arbitrators. BCS acknowledged *Employers Insurance Co. of Wausau v. Century Indemnity Co.*, 443 F.3d 573 (7th Cir. 2006), which holds that arbitrators may resolve this question for themselves (subject to judicial review after an award has been made), but it maintained that *Stolt-Nielsen* supersedes *Wausau* and requires the court to resolve the issue before the arbitration can proceed. District Judge Lefkow concluded, however, that *Stolt-Nielsen* did not displace *Wausau* and that the arbitrators therefore may resolve this and other procedural questions for themselves. See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).

Although that decision was interlocutory—the plans' request under §5 remained pending—BCS immediately appealed. That appeal has been docketed as No. 11-2343. Chief Judge Holderman concluded that the third arbitrator should, and may, be appointed while that appeal was pending, and did so. BCS filed a second appeal (No. 11-2757) from that decision. Its only argument in the second appeal is that the first caused the district court to lose jurisdiction and prevented it from acting on the plans' request for the appointment of a third arbitrator. See *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989).

Because the case is over in the district court, and appeal No. 11-2757 contests the final decision, it might seem unnecessary for us to decide whether the interlocutory appeal (No. 11-2343) is within our jurisdiction. But that subject cannot be elided, because the propriety of

the interlocutory appeal is the sole issue contested between the parties on the appeal from the final decision. If the interlocutory appeal is proper, then Chief Judge Holderman should not have acted. If the interlocutory appeal is improper, however, then jurisdiction remained in the district court and there was no obstacle to the appointment of a third arbitrator and entry of the final judgment.

BCS captioned its motion one to compel arbitration, and the district court used that language when denying it. ("BCS Insurance Company's cross-petition to compel arbitration is denied.") As BCS sees things, this ensures appellate jurisdiction, for 9 U.S.C. §16(a)(1)(B) provides that an appeal may be taken from any order "denying a petition under section 4 of this title to order arbitration to proceed". Yet how would it be possible to call BCS's request one to "order arbitration to proceed"? Arbitration was *already* proceeding: the plans had demanded arbitration, and both the plans and BCS had named arbitrators. That arbitration was under way, and that the two arbitrators had reached an impasse, is why the plans filed suit seeking the appointment of a third arbitrator under §5.

The caption on BCS's motion is an example of artful pleading. It wanted to disrupt the arbitration, and help itself to an interlocutory appeal, so instead of calling the request what it was—a proposal that a federal judge order the panel in an ongoing arbitration to decide a particular issue in a specified way—the litigant captioned its motion one to "compel arbitration" under its preferred procedures. Unlike Humpty Dumpty, however, a litigant

cannot use words any way it pleases. The phrase "order arbitration to proceed" appears in a federal statute, and its meaning depends on federal law; judges rather than litigants decide what it means to "order arbitration to proceed." That the parties may call a procedure for having a neutral third party make a binding decision "expert resolution" does not make that procedure less "arbitration". *Omni Tech Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797 (7th Cir. 2005). Similarly, that a litigant calls a motion to *disrupt* arbitration one to *compel* arbitration does not make it so. Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one. See Lloyd Reinhardt, *Warranted Doability*, 63 Philosophy 471 (1988). Just so with BCS's motion.

We observed earlier this year that judges must not intervene in pending arbitration to direct arbitrators to resolve an issue one way rather than another. *Trustmark Insurance Co. v. John Hancock Life Insurance Co.*, 631 F.3d 869 (7th Cir. 2011). Review comes at the beginning or the end, but not in the middle. If BCS wanted a judge to decide whether the plans' demands should be arbitrated jointly or separately, it should have refused to appoint an arbitrator. The plans then would have filed suit seeking an order compelling BCS to arbitrate, and BCS could have asked the district judge to address the question whether *Stolt-Nielsen* supersedes *Wausau*. But that's not what happened. Both sides appointed their arbitrators, and the proceeding got under way. BCS apparently has thought better of its decision, but it cannot obtain mid-arbitration review by putting a misleading caption on its motion.

Our point is not that the policy against mid-arbitration judicial review trumps §16(a)(1)(B). The statute is what it is, and judges must implement its rule whether or not they think it wise, and whether or not they think the appeal meritorious. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). Our point, rather, is the same as President Lincoln's: the meaning of a word depends on what it denotes to members of the appropriate linguistic community, not on idiosyncratic usages that people may be able to devise. See also Ludwig Wittgenstein, *Philosophical Investigations* (G.E.M. Anscombe translation 1953). Meaning is objective and external to the speaker. What BCS actually wanted was an order directing the arbitrators to hold separate rather than consolidated proceedings; when denying that request, the district court did not refuse to "order arbitration to proceed" as §16(a)(1)(B) uses that phrase. We therefore dismiss appeal No. 11-2343 for want of jurisdiction.

This means that the district court was entitled to appoint a third arbitrator; it did not need to wait for us to dismiss the appeal, which was ineffectual from the outset. (The district court followed the procedure prescribed by *Apostol* and proceeded only after certifying its belief that BCS's appeal was unauthorized.) BCS does not contend that the district court abused its discretion or otherwise erred in selecting the third arbitrator under §5. And, for reasons we have already explained, BCS is not entitled to a mid-arbitration review of the choice between separate and consolidated proceedings. If a party could run to court and contest every procedural ruling that it believes is erroneous and not squarely

covered by the contract (which rarely tells arbitrators what procedures to use), arbitration would fail to offer an attractive alternative to litigation. Litigation usually entails only one proceeding in the district court, followed by one appeal. If BCS were right, however, every arbitration could be contested (with an appeal) before it begins; every supposed procedural error could be contested in a separate suit (with another appeal) in mid-arbitration; and then the outcome could be contested in a proceeding to confirm or vacate the award, with yet another appeal. That would make arbitration both interminable and impossibly expensive.

For completeness we add that, even had BCS refused to appoint an arbitrator and thus forced the plans to initiate a *genuine* proceeding to compel arbitration, the district court would have allowed the arbitrators to decide in the first instance whether a consolidated proceeding is permissible under the contracts and, if so, whether it is appropriate. That's the upshot of *Wausau*, and *Stolt-Nielsen* does not hold otherwise. It reached the Supreme Court after arbitration had been concluded. Whether the arbitrators had exceeded their powers, and thus whether the award could be set aside under 9 U.S.C. §10(a)(4), was the only question presented by the petition for certiorari.

The subject *was* before the Supreme Court in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), but that case did not produce a majority. The plurality opinion (Breyer, J., joined by Scalia, Souter, and Ginsburg, JJ.) concluded that arbitrators are entitled to make the initial

decision about whether class arbitration has been autho-rized. 539 U.S. at 450–54. Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy, thought that a court should make the initial decision. *Id*. at 456–60. Justices Stevens and Thomas participated but did not address the question. *Stolt-Nielsen* did not do so either. This leaves in place our post-*Bazzle* decision in *Wausau*.

Apparently BCS believes that any party to arbitration is entitled to litigate in advance whether arbitrators *would* exceed their powers if they reached a particular procedural decision during the course of an arbitration. Nothing in the Federal Arbitration Act authorizes that sort of anticipatory review, which in many situations would entail an advisory opinion. After all, the arbitrators might end up agreeing with the party's position—here, the neutral arbitrator may well agree with BCS that there should be twelve proceedings rather than one. Or it may turn out that BCS will prevail in the arbitration, and the dispute about consolidation will not need judicial resolution. The only question that a court should address before arbitration starts is whether the parties have agreed to arbitrate at all. See *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986). BCS and the plans have agreed to arbitrate; the arbitrators themselves resolve procedural questions in the first instance (and usually the last instance).

At oral argument counsel for BCS suggested that a consolidated proceeding that resolves the rights of BCS vis-à-vis multiple plans isn't "really" arbitration at all but is some extra-contractual monstrosity. Counsel quoted

language from *Stolt-Nielsen* about how class actions differ from individual litigation by turning small claims into potentially multi-million-dollar, bet-your-company gambles that also require complicated notices to missing class members who have never asserted an interest in arbitrating. Yet the Court in *Stolt-Nielsen* did not deny that class-wide arbitration is still "arbitration"; it just held that certifying a class exceeds an arbitrator's powers unless the parties have consented to class procedures. If class-wide arbitration is still "arbitration," so is consolidated arbitration.

Not even BCS denies that a panel of arbitrators could resolve one plan's claim and then apply that decision to the others via doctrines of claim preclusion or issue preclusion. (Deciding the preclusive effect of an award is one of the many procedural subjects securely within an arbitrator's powers. See *Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R.*, 24 F.3d 937 (7th Cir. 1994); *Production & Maintenance Employees v. Roadmaster Corp.*, 916 F.2d 1161 (7th Cir. 1990).) Consolidating the plans' claims does not change the stakes; whether it would be simpler and cheaper to handle twelve claims separately or together is the sort of issue an adjudicator—whether judge or arbitrator—resolves all the time.

Class actions always have been treated as special. One self-selected plaintiff represents others, who are entitled to protection from the representative's misconduct or incompetence. Often this requires individual notice to class members, a procedure that may be more complex

and costly than the adjudication itself. See *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). As a practical matter the representative's small stake means that lawyers are in charge, which creates a further need for the adjudicator to protect the class. Finally, class actions can turn a small claim into a whopping one. Unsurprisingly, Fed. R. Civ. P. 23 imposes stringent requirements on class certification. Consolidation of suits that are going to proceed anyway poses none of these potential problems. That's why Fed. R. Civ. P. 42(a) leaves to a district judge's discretion—and without any of Rule 23's procedures and safeguards—the decision whether to consolidate multiple suits. Just as consolidation under Rule 42(a) does not change the fundamental nature of litigation, so consolidation of the plans' claims would not change the fundamental nature of arbitration.

This is not to say that this arbitral panel *should* handle all of the plans' claims at one go. That's up to the panel, which must both interpret the contract and exercise any discretion that the contract allows. All we conclude is that BCS is not entitled to a peremptory order that would take the question out of the arbitrators' hands.

Appeal No. 11-2343 is dismissed for want of jurisdiction. In No. 11-2757 the judgment is affirmed.