In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3609

PAMELA HERRINGTON, individually and
on behalf of all others similarly situated,

*Plaintiff-Appellee,*

*v.*

WATERSTONE MORTGAGE CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:11-cv-00779 — **Barbara B. Crabb**, *Judge.*

ARGUED MAY 29, 2018 — DECIDED OCTOBER 22, 2018

Before BAUER, BARRETT, and ST. EVE, *Circuit Judges.*

BARRETT, *Circuit Judge.* Pamela Herrington filed class and collective actions against Waterstone Mortgage Corporation, her former employer, for wage and hour violations. The district court compelled arbitration pursuant to an agreement between Herrington and Waterstone, but it struck as unlawful a waiver clause that appeared to forbid class or collective arbitration of Herrington's claims. The arbitrator conducted a

collective arbitration over Waterstone's objection and ulti-mately awarded more than $10 million in damages and fees to Herrington and 174 similarly situated employees.

A recent Supreme Court decision has now put this award in doubt. In *Epic Systems Corp. v. Lewis*, – U.S. –, 138 S. Ct. 1612 (2018), the Court upheld the validity of waiver provisions like the one in Herrington's agreement with Waterstone. If impos-ing collective arbitration on Waterstone violated that waiver, we must instruct the district court to vacate the award, which would put Herrington back at square one.

But Herrington does not concede that the collective arbi-tration violated the waiver. In an attempt to save her award, she insists that her agreement with Waterstone affirmatively permits class or collective arbitration of her claims despite the presence of a valid waiver indicating otherwise. While this ar-gument is weak, someone must evaluate it—and we must de-cide who has that job. If the availability of class or collective arbitration is a threshold question of arbitrability, the district court has to decide it. Otherwise, it falls to the arbitrator.

For reasons we explain below, we conclude that the avail-ability of class or collective arbitration is a threshold question of arbitrability. On remand, the district court, rather than the arbitrator, must evaluate Herrington's contract with Water-stone to determine whether it permits class or collective arbi-tration.

## I.

Pamela Herrington sued Waterstone Mortgage Corpora-tion in federal court, asserting two claims. First, she alleged that Waterstone had failed to pay her minimum wages and overtime pay under the Fair Labor Standards Act. She

brought that claim as a collective action under the Act, which meant that other employees could opt in to the lawsuit. 29 U.S.C. § 216(b). Second, she claimed that Waterstone had breached its contract with her. She brought that claim as a class action under Federal Rule of Civil Procedure 23, which meant that Herrington would represent a class of absent claimants unless they opted out.

But Herrington had signed an agreement to arbitrate employment disputes, and Waterstone moved to enforce it. Herrington's employment agreement with Waterstone contained an arbitration clause, which provided in part:

> In the event that the parties cannot resolve a dispute by the [alternative dispute resolution] provisions contained herein, any dispute between the parties concerning the wages, hours, working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship shall be resolved through binding arbitration in accordance with the rules of the American Arbitration Association applicable to employment claims. Such arbitration may not be joined with or join or include any claims by any persons not party to this Agreement.

Based on this language, Waterstone asked the district court to either dismiss the suit for lack of jurisdiction or stay it and compel arbitration.

Herrington responded that the arbitration clause was unenforceable. She argued that the entire clause, which required her to pay half of the arbitration costs, was invalid because it

imposed excessive costs on her. She also challenged the validity of the sentence waiving her right to join the claims of others in the proceeding. According to Herrington, this waiver violated both the Fair Labor Standards Act, which permits collective actions, and the National Labor Relations Act, which protects concerted activity. She did not contest Waterstone's position that her claims were within the scope of the waiver in the arbitration clause; indeed, her arguments under the Fair Labor Standards Act and National Labor Relations Act assumed that the waiver, if valid, would bar both class and collective arbitration.

The court rejected Herrington's contention that the agreement to arbitrate was unenforceable. It said that Herrington had failed to show that the agreement imposed excessive costs on her because she "failed to show that arbitration would be any more expensive than litigation in federal court." But it accepted her argument that the waiver in the arbitration agreement was unlawful. The Fair Labor Standards Act was not the problem; the court agreed with the many courts that have held that the Fair Labor Standards Act does not mandate the availability of collective arbitration. *See, e.g.*, *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004). The National Labor Relations Act, however, was a different story. That Act gives employees the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," 29 U.S.C. § 157, and instructs employers not "to interfere with, restrain, or coerce employees in the exercise of" that right, 29 U.S.C. § 158(a)(1). At the time the court ruled on Waterstone's motion to compel arbitration, the National Labor Relations Board had just decided that the right "to engage in other concerted activities for … mutual aid or protection" includes the right to

pursue claims collectively; accordingly, employers who condition employment on accepting arbitration agreements that waive class and collective actions violate that Act. *In re D.R. Horton, Inc.*, 357 NLRB 2277, 2289 (2012), *enforcement denied in relevant part, D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013). Relying on the Board's decision, the court struck the sentence waiving Herrington's right to bring a class or collective proceeding in arbitration.

It sent the parties to arbitration with an order unequivocally instructing the arbitrator that Herrington "must be allowed to join other employees to her case." The court left it to the arbitrator to determine whether to accomplish that through joinder, an opt-in procedure similar to a collective action under the Fair Labor Standards Act, or an opt-out proceeding similar to a class action under Rule 23. Herrington asked for class arbitration, which is available only if the arbitration agreement contains evidence that the parties affirmatively consented to that procedure. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010). Because class arbitration "fundamental[ly] changes" the nature of the proceeding, "the parties' mere silence on the issue of class-action arbitration" does not signify assent. *Id.* at 686–87. The arbitrator had to find more.

Waterstone argued that the waiver settled the question: the waiver prohibited class arbitration, so Waterstone had obviously not assented to it. The arbitrator rejected that argument, reasoning that he was bound to ignore the waiver because the district court had invalidated it. Yet even without the waiver, Waterstone contended, the agreement contained no evidence that the parties consented to class arbitration. The arbitrator rejected that argument as well, reasoning that the

parties had agreed to class arbitration when they agreed to proceed under the rules of the American Arbitration Association "applicable to employment claims." Waterstone maintained that this language incorporated only the general set of rules for employment claims, which are embodied in a rulebook titled "Employment Arbitration Rules and Mediation Procedures." But the arbitrator interpreted it to also incorporate the Association's "Supplementary Rules for Class Arbitrations." By incorporating both sets of rules, he said, the agreement authorized class arbitration. In passing, the arbitrator added that even if the waiver were intact, the agreement's incorporation of the Association's rules created an ambiguity that he would construe against Waterstone. He decided to proceed with a class arbitration modeled on Rule 23 but later switched to a collective arbitration that required additional claimants to opt in.[1]

Throughout the arbitration, Waterstone repeatedly asked the district court to reconsider its initial decision and to change various decisions that the arbitrator made along the way; those efforts were all unsuccessful. In the end, the arbitrator issued an award of over $10 million in damages and fees in favor of Herrington and 174 other claimants who had opted in to the proceeding. Waterstone appeals from the final judgment enforcing the arbitrator's award, *see* 28 U.S.C. § 1291, arguing that because the waiver is valid, the collective arbitration violated Waterstone's agreement with Herrington.

---

[1] The putative class contained at least 490 members, some of whom had signed arbitration agreements with Waterstone and some of whom had not.

II.

Herrington agreed to arbitrate employment disputes with Waterstone and that any "[s]uch arbitration may not be joined with or join or include any claims by any persons not party to this Agreement." The first issue in this appeal is whether the district court incorrectly struck this waiver from the parties' arbitration agreement. Had we issued this opinion a year ago, the answer would be a simple "no." The district court interpreted the National Labor Relations Act to prohibit agreements that require single-claimant arbitration of employment claims, and we later reached the same conclusion in an unrelated case. *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1161 (7th Cir. 2016).

But the Supreme Court overruled our decision while Waterstone's appeal was pending. *Epic Sys. Corp. v. Lewis*, – U.S. –, 138 S. Ct. 1612 (2018). After examining both the Federal Arbitration Act and the National Labor Relations Act, the Court held that an arbitration agreement does not violate the National Labor Relations Act's protection of "other concerted activities for … mutual aid or protection" when it requires plaintiffs to pursue employment-related claims in single-claimant arbitrations. *Id.* at 1624–29. *Epic Systems* means that the district court was wrong to treat the waiver in Herrington's agreement with Waterstone as unlawful.

III.

The lawfulness of the waiver is the easy part of this appeal. The hard part is a question that *Epic Systems* does not address: what happens next? *Epic Systems* makes clear that a waiver of the right to proceed in a class or collective arbitration is valid. But someone has to interpret the arbitration agreement—this

time, including the waiver—to determine whether it authorized the collective arbitration that occurred. One could reasonably wonder why the availability of collective arbitration is in dispute, given that Herrington agreed that her "arbitration may not be joined with or join or include any claims by any persons not party to this Agreement." Indeed, until recently, Herrington herself assumed that this waiver, if enforceable, would require her to proceed in a bilateral arbitration.[2] But she has now changed her tune: she claims that notwithstanding the waiver, the agreement reflects the parties' affirmative consent to class and collective arbitration. As implausible as this argument may be, either the court or the arbitrator has to settle it. We must decide which.

The choice between them turns on whether the availability of class or collective arbitration is a question of arbitrability, which the court decides, or a subsidiary issue, which goes to the arbitrator. Questions of arbitrability involve "gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). Subsidiary questions "grow out of the dispute and bear on its final disposition." *John Wiley & Sons, Inc. v.*

---

[2] For example, when Waterstone first moved to compel arbitration, Herrington argued that the waiver of her right to proceed in a class or collective arbitration violated the Fair Labor Standards Act and the National Labor Relations Act. She did not argue in the alternative that the agreement did not preclude her from initiating—and in fact, affirmatively authorized her to initiate—a class or collective arbitration. *See Stolt-Nielsen*, 559 U.S. at 687 (holding that the agreement must contain affirmative evidence of class arbitration authorization).

*Livingston*, 376 U.S. 543, 557 (1964). Whether the availability of class or collective arbitration is a gateway issue of arbitrability is an open question in our circuit. The Supreme Court has expressly reserved it, *see Oxford Health*, 569 U.S. at 569 n.2, and we have never addressed it. But every federal court of appeals to reach the question has held that the availability of class arbitration is a question of arbitrability. *See Del Webb Cmties., Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *JPay, Inc. v. Kobel*, – F.3d –, 2018 WL 4472207, at \*8 (11th Cir. Sept. 18, 2018); *see also Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014) (unpublished). We agree.[3]  And while Herrington's arbitration with Waterstone was conducted as a collective rather than class proceeding, the forms are so closely related that the same analysis applies. *See Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 335 (3d Cir. 2014) (treating class and collective arbitration as interchangeable for purposes of arbitrability).[4]

---

[3] That said, the parties can agree to delegate to an arbitrator the question whether an agreement authorizes class or collective arbitration. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability.'"); *see, e.g., JPay*, 2018 WL 4472207, at \*9 (holding that the availability of class arbitration is a question of arbitrability and finding that the parties intended to delegate that question to the arbitrator). In that circumstance, the agreement must "clearly and unmistakably provide" for such delegation. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 312 F.3d 833, 842 (7th Cir. 2002).

[4] Class and collective actions are not identical. In a class action, members of the class are bound to the judgment unless they "opt out" of the proceeding. In a collective action, members of the class are bound to the judgment only if they "opt in" to the proceeding. *See, e.g., Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (observing that

The availability of class or collective arbitration involves a foundational question of arbitrability: whether the potential parties to the arbitration agreed to arbitrate. *See John Wiley & Sons*, 376 U.S. at 546–47; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). When Herrington filed her putative class action and then sought to proceed in a class arbitration, she asked the court and then the arbitrator to resolve the claims of absent class members. By proposing that the arbitration include additional employees, Herrington raised the question whether those employees had agreed to submit their claims against Waterstone to arbitration, not to mention whether Waterstone had agreed to arbitrate rather than litigate with them. *See Opalinski*, 761 F.3d at 332–33 (holding that the availability of class arbitration is a question of arbitrability because it "affects whose claims may be

---

certification under Rule 23, unlike conditional certification under the Fair Labor Standards Act, immediately "produce[s] a class with independent legal status" because certification immediately populates the class). They are nonetheless closely related. *See, e.g.*, *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012) ("*Espenscheid I*") ("Courts treat [collective actions] as the equivalent of class actions—and thus for example do not require motions to intervene and do require certification."); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("*Espenscheid II*") ("[D]espite the difference between [the two] ... there isn't a good reason to have different standards for [] certification."). For this reason, we have applied legal standards developed for class actions to collective actions. *See Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 451–52 (7th Cir. 1990) (analogizing to Rule 23(e) to hold that the district court abused its discretion in accepting a settlement that excluded certain opt-in claimants—who were not notified of the proposed settlement—from recovery); *Espenscheid I*, 688 F.3d at 877 (holding that lead plaintiffs in a collective action might be entitled to an incentive award, just as named plaintiffs in class actions are).

arbitrated").[5] To be sure, an opt-in procedure—in contrast to an opt-out procedure—ensures that absent class members consent to the arbitration of their claims. *See Oxford Health*, 569 U.S. at 574–75 (Alito, J., concurring). But it does not avoid the arbitrability question, because an opt-in claimant's willingness to arbitrate with the defendant does not establish that the defendant agreed to arbitrate with the opt-in claimant.[6] The Supreme Court has emphasized that "parties may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen*, 559 U.S. at 683; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[Arbitration] is a way to resolve those disputes—but only those disputes—that *the parties* have agreed to submit to arbitration." (emphasis added)). Deciding whether Herrington's agreement with Waterstone permits class or collective arbitration requires the adjudicator to determine whether Waterstone agreed to arbitrate not only with Herrington, but also with members of her proposed class. It thus resolves the foundational question of "with whom" Waterstone chose to arbitrate. *See Stolt-Nielsen*, 559 U.S. at 683.

Deciding whether a contract permits class or collective arbitration involves a second (and in this case, related) question

---

[5] The American Arbitration Association's class-action rules expressly instruct the arbitrator to engage this question of arbitrability by requiring the arbitrator to confirm that "each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members."

[6] It is notable that the putative class—as well as the ultimate opt-in class—included employees who had not signed arbitration agreements with Waterstone.

of arbitrability: whether the agreement to arbitrate covers a particular controversy. *See John Wiley & Sons*, 376 U.S. at 547 ("[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." (quotation omitted)); *see also Rent-A-Center*, 561 U.S. at 68–69. Herrington's contract with Waterstone required arbitration of employment-related disputes "between them or arising out of their employment relationship." But Herrington requested that the arbitration resolve not only the disputes "between them," but also disputes between Waterstone and many other employees. Determining whether the agreement reflects the parties' consent to class or collective arbitration requires the decisionmaker to determine whether the parties agreed to arbitrate those disputes as well. And that is a gateway matter for the court to decide. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (explaining that a court may order arbitration of a dispute "only where the court is satisfied that the parties agreed to arbitrate *that dispute*.").

Our final reason for treating the availability of a class or collective proceeding as a question of arbitrability is the most important. "Fundamental" questions belong in the "gateway" category, *Reed Elsevier*, 734 F.3d at 598, and the Supreme Court has repeatedly emphasized that the structural features of class arbitration make it a "fundamental" change from the norm of bilateral arbitration. *Stolt-Nielsen*, 559 U.S. at 686; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–50 (2011). In a class proceeding, the arbitrator "resolves many disputes between hundreds or perhaps even thousands of parties." *Stolt-Nielsen*, 559 U.S. at 686. And rather than binding only the parties to the arbitration, the arbitrator can now "adjudicate[]

the rights of absent parties as well." *Id.* These features—the size of the suit and its potential impact on absent class members—cause class arbitration to diverge sharply from the bilateral model. Collective arbitration causes similar divergence, even though members of the class are not absent. It too can involve hundreds of claimants, and those who opt in to the proceeding have no more control over the proceeding than completely absent class members would. *See Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 640 (7th Cir. 2011) (noting, with respect to a class action, that "[a]s a practical matter the representative's small stake means that lawyers are in charge, which creates a further need for the adjudicator to protect the class.").

Because of their distinct structure, class and collective arbitration require procedural rigor that bilateral arbitrations do not. Both involve the threshold decision whether to certify a class, and the arbitrator typically tracks Federal Rule of Civil Procedure 23 in making that choice. Thus, the arbitrator must investigate a variety of issues incidental to the parties' actual dispute, including whether the putative class is so numerous that joinder of all members is impracticable; whether there are questions of law or fact common to the class; whether the claims or defenses of the representative parties are typical of the claims or defenses of the class; and whether the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).[7] And both class and

---

[7] Certification of class arbitrations overseen by the American Arbitration Association is governed by Supplementary Rule 4, which mimics Rule 23 in many respects. The arbitrator in this case applied Supplementary Rule 4 in certifying Herrington's collective action. His decision to do so is consistent with the practice of the courts, which draw on Rule 23 when determining whether to certify collective actions under the Fair

collective arbitration typically involve extensive and con-
tested efforts to notify absent class members of the proceed-
ings. Because of these additional procedures, "the switch
from bilateral to class arbitration sacrifices the principal ad-
vantage of arbitration—its informality—and makes the pro-
cess slower, more costly, and more likely to generate proce-
dural morass than final judgment." *AT&T Mobility*, 563 U.S.
at 348.

While parties to class or collective arbitration accept re-
duced efficiency, they continue to shoulder arbitration's pri-
mary detriment: a drastically narrowed ability to seek error
correction through appellate review.[8] The stakes of a class or
collective proceeding render the loss of appellate review par-
ticularly significant for the defendant. A defendant willing to
accept the cost of error in a bilateral arbitration is not neces-
sarily willing to accept it "when damages allegedly owed to
tens of thousands of potential claimants are aggregated and
decided at once." *Id.* Here, for example, Waterstone's poten-
tial liability to Herrington was a fraction of the $10 million

---

Labor Standards Act. *See Espenscheid II*, 705 F.3d at 772 ("[T]here isn't a
good reason to have different standards for the certification of [class and
collective actions], and the case law has largely merged the standards.").

[8] A court can vacate an arbitral award only where the award "was
procured by corruption, fraud, or undue means"; "there was evident par-
tiality or corruption in the arbitrators"; "the arbitrators were guilty of mis-
conduct in refusing to postpone the hearing ... or in refusing to hear evi-
dence pertinent and material to the controversy[,] or of any other misbe-
havior by which the rights of any party have been prejudiced"; or if the
"arbitrators exceeded their powers, or so imperfectly executed them that
a mutual, final, and definite award ... was not made." 9 U.S.C. § 10. And
parties may not contractually expand the grounds or nature of this judicial
review. *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008).

that the arbitrator awarded to the class as a whole. Transforming an individual dispute into a class or collective action "can turn a small claim into a whopping one." *Blue Cross Blue Shield*, 671 F.3d at 640. When that whopping claim is arbitrated, the defendant might find itself "bet[ting] the company with no effective means of review" of either class certification or final judgment. *AT&T Mobility*, 563 U.S. at 351.

Of course, not every class or collective action will be a "bet the company" affair. It depends on the size of the class and the size of the company. But the availability of class or collective arbitration is either a threshold question of arbitrability or it isn't; classifying an issue as a "gateway" question does not depend on case-by-case analysis. Nor, in any event, is this question susceptible to case-by-case resolution. The size of the class—and therefore the amount at stake—does not take shape until the class is certified, and deciding whether the parties agreed to class or collective arbitration is antecedent to certification.

Herrington's primary argument against our treating the availability of class or collective arbitration as a question of arbitrability is that our precedent precludes it. We have held that an arbitrator may decide whether to consolidate multiple arbitrations into a single proceeding. *See Blue Cross Blue Shield*, 671 F.3d at 639–40; *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 581 (7th Cir. 2006).[9] According to

_____

[9] District court decisions within the Seventh Circuit reflect disagreement about whether *Blue Cross Blue Shield* and *Wausau* control the class-arbitration question. *Compare Henderson v. U.S. Patent Comm'n, Ltd.*, 188 F. Supp. 3d 798, 802–04 (N.D. Ill. 2016) (concluding that *Blue Cross Blue Shield* and *Wausau* are inapplicable to class arbitration), *with Williams-Bell v. Perry Johnson Registrars, Inc.*, 2015 WL 6741819, at *8 (N.D. Ill. Jan. 8, 2015)

Herrington, certifying a class or collective action is function-
ally the same as consolidating proceedings; thus, we must
treat them the same way.

Herrington misreads our precedent, which expressly rec-
ognizes the difference between consolidating bilateral arbitra-
tions and authorizing class arbitration. We explained in *Blue
Cross Blue Shield* that class actions "always have been treated
as special" because of numerous characteristics not present in
consolidated arbitration. *Blue Cross Blue Shield*, 671 F.3d at 640.
In class and collective actions, a "self-selected plaintiff repre-
sents others"; the rules entitle the represented parties "to pro-
tection from the representative's misconduct or incompe-
tence"; there is often a costly process to notify individual class
members; the lawyers are effectively in charge of the process
because of the representative plaintiff's small stake in the suit;
and the class nature of the actions can dramatically increase
the amount of money at stake. *Id.* We categorized the "[c]on-
solidation of suits that are going to proceed anyway" as pro-
cedural precisely because it poses none of those same con-
cerns. *Id.*; *see also id.* ("Consolidation of the plans' claims
would not change the fundamental nature of arbitration.").[10]
*Blue Cross Blue Shield* therefore strongly supports rather than

---

(relying in part on *Blue Cross Blue Shield* and *Wausau* to hold that class ar-
bitration is not a question of arbitrability).

[10] We also note that consolidating suits—or even determining
whether an arbitration agreement permits the consolidation of suits—
does not require the arbitrator to decide whether the parties have agreed
to arbitrate with one another and what issues they have agreed to arbi-
trate. Consolidation involves suits that are going to proceed anyway; thus,
those threshold determinations have already been made.

precludes our conclusion that the availability of a class or collective proceeding is a question of arbitrability.

* * *

Because the district court erred in invalidating the waiver clause in the parties' arbitration agreement, we vacate the district court's order enforcing the arbitration award. On remand, the district court should conduct the threshold inquiry regarding class or collective arbitrability to determine whether Herrington's agreement with Waterstone authorizes the kind of arbitration that took place. If the district court determines that the agreement allows such an arbitration, our decision leaves the district court free to confirm the award. If, however, the district court determines that Herrington's agreement with Waterstone requires single-plaintiff arbitration, it should vacate the award and send the dispute to the arbitrator for a new proceeding.